UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANDRA PAOLA GALEANO-ARIZA,

Petitioner,

v.

WARDEN, et al.,

Respondents.

Case No. 5:26-cv-4081-HDV-BFM

**ORDER GRANTING PRELIMINARY INJUNCTION [2]**

## I. INTRODUCTION

Petitioner Sandra Paola Galeano Ariza entered the United States three-and-a- half years ago and was released by immigration authorities under community supervision. *Id.* ¶ 6. Since then, she has legally worked and abided by her release conditions. She has no criminal history, and has a pending asylum case based on alleged violence she faced in her home country of Colombia.

In April 2026, her ankle monitor failed. Petitioner reported the malfunction that same day, and followed instructions to have it replaced. Despite all of this, she was detained at her most recent immigration check-in without any prior hearing.

Finding that Petitioner's due process rights had been violated, the Court released her from custody on July 30, 2026. This written order memorializes the basis for that release.

## II. BACKGROUND

Petitioner is a native and citizen of Colombia who came to the United States on February 28, 2023 "seeking protection from violence and persecution." Declaration ("Petitioner Decl.") ¶ 4 [Dkt. 3]. After entering the United States, Petitioner was released on an order of recognizance ("OREC") and placed under community supervision. *Id.* ¶ 6. Petitioner filed an application for asylum. *Id.* ¶ 5.

During the three-year period Petitioner has lived in the United States prior to her detention, she complied with her supervision conditions, reported to immigration authorities, appeared for scheduled appointments, obtained employment authorization, maintained steady employment as a housekeeper, and wore an electronic monitoring device as required by immigration authorities. *Id.* ¶¶ 7–9, 12–16. Petitioner has no criminal history. *Id.* ¶ 17.

On April 10, 2026, a Friday, Petitioner's electronic monitoring device malfunctioned. *Id.* ¶ 29. That same day, she reported the malfunction to authorities and was instructed to have it replaced on Monday. *Id.* ¶ 32; Traverse at 1 [Dkt. 19]. The following Monday, April 13, the monitoring device was replaced. Petitioner Decl. ¶ 34. Petitioner voluntarily appeared at a scheduled appointment with immigration authorities in Santa Ana on May 19, 2026. *Id.* ¶ 40.

Immigration officers arrested Petitioner at that appointment. *Id.* ¶ 46. Petitioner received no prior notice or hearing before her parole was terminated. Termination of Parole Letter [Dkt 13-4]. ICE records state her arrest was due to "incompliance with the ISAP Alternatives to Detention

(ATD) program," without any explanation. I-213 at 3 [Dkt. 13-3].

On June 2, 2026, Petitioner filed a petition for writ of habeas corpus ("First Petition"). *Sandra Paola Galeano Ariza v. Markwayne Mullin*, et al., 5:26-cv-03025-BFM (C.D. Cal. June 26, 2026). The First Petition was granted.[1] *Id.* Petitioner received an individualized bond hearing before an immigration judge on June 16, 2026. Petitioner Decl. ¶ 59. The immigration judge deemed Petitioner to be a flight risk and denied Petitioner's release. *Id.* ¶ 62; Order of the Immigration Judge [Dkt. 12-1]. Petitioner remained in custody at Adelanto ICE Processing Center ("Adelanto") since her May 19th arrest. During her detention, Petitioner experienced symptoms of severe psychological distress, as confirmed by psychological evaluations conducted on July 10 and July 13. *Id.* ¶¶ 75–113. Petitioner has a minor son residing in Colombia. *Id.* ¶ 92. Her communication with her son was extremely limited during her incarceration. *Id.* ¶ 93.

On July 21, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). [Dkt. 1], and filed the instant Motion requesting release from immigration detention. Motion at 2 [Dkt. 2]. The Court granted the Motion in part, enjoining Respondents from "transferring, relocating, or removing Petitioner outside of the Central District of California (including, but not limited to, transferring Petitioner to an ICE facility outside of the Central District or removing Petitioner from the United States, including to a third country) pending further order of the Court." Order Granting in Part Motion for Temporary Restraining Order ("Stay Put Order") at 2 [Dkt. 10].

The Court held a hearing on whether a preliminary injunction should issue on July 30, 2026. Hearing Minutes [Dkt. 18]. Petitioner was present at the hearing, along with her counsel,[2] and a Spanish interpreter. *Id.* The Court granted the preliminary injunction and ordered Petitioner's immediate release from custody. *Id.*

---

[1] All parties consented to the Magistrate Judge's jurisdiction.

[2] The Deputy Public Defender filed a notice of appearance on July 29, 2026. [Dkt. 14].

## III. LEGAL STANDARD

The standard for issuing a preliminary injunction is the same as that for issuing a temporary restraining order. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). To prevail on such a motion, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in his favor, and (4) a temporary restraining order is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Where the non-movant is a government entity, "the third and fourth factors ... merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another." *Id.* at 684 (citation omitted). "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id.* (citation omitted).

## IV. DISCUSSION

### A. Likelihood of Success

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. It is firmly established that these protections extend to noncitizens present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). In *Mathews v. Eldridge*, the Supreme Court outlined three factors relevant for the due process inquiry: (i) the private interest, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought. 424 U.S. 319, 335 (1976).[3] As explained below, and articulated by the Court at the hearing on July 30, 2026, each of

---

[3] The Supreme Court, the Ninth Circuit, and its sister circuits have consistently applied the *Mathews*

the *Mathews* factors strongly favors Petitioner's release and her entitlement to a hearing before she may be re-detained.

**1. Private Interest**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Id*. Petitioner's prior release into society, "constituted and 'implied promise' that [her] liberty would not be revoked unless [she] 'failed to live up to the conditions of [her] release.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (citing Morrissey, 408 U.S. at 482).

Here, Petitioner's interest in her liberty from immigration detention is substantial. Petitioner has spent over three years building a life and community in the United States in reliance on the

---

test to non-citizens' due process challenges where the non-citizen has entered and been residing in the United States. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (collecting cases).

community supervision order that was issued upon her initial release from immigration custody. Petitioner has established ties in the community, lawfully obtained work authorization, and was working steadily before she was detained. She was also in the process of having pain in her breast evaluated when she was unexpectedly arrested. Petitioner Decl. ¶¶ 118–124. Her detention without a previous hearing deprived her of this interest. *See Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); *Morales v. U.S. Immigr. & Customs Enf't*, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234, at *5 (C.D. Cal. Apr. 15, 2026) ("Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of parole. . . . A liberty interest, such as Petitioner's, is paramount and should be protected."); *Morrissey*, 408 U.S. at 482.

**2. Risk of Erroneous Deprivation**

The Government's actions have already shown that the risk of erroneous deprivation for Petitioner is high. The Government previously determined Petitioner was not a flight risk or danger to the community when they released her on OREC. *See Pinchi*, 792 F. Supp. 3d at 1034 & n.3; 8 C.F.R. § 1236.1(c)(8). "DHS may detain a paroled noncitizen only after a 'material' change in circumstances" which "must represent individualized legal justification for detention." *Madrigal-Cortez v. Santacruz*, 828 F. Supp. 3d 1054, 1060 (C.D. Cal. 2026) (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019), and *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025)). However, without a pre-deprivation hearing, before a neutral adjudicator, Respondents did not have to demonstrate a material change in circumstances and ignored Petitioner's reasonable explanation regarding the ankle monitor malfunction.

Petitioner's ankle monitor stopped working on April 10, 2026. Petitioner Decl. ¶ 29. She immediately reported the device malfunction on that Friday and was instructed to have it replaced the following Monday, which she did. *Id.* ¶¶ 32–34. At her arrest, the notice of termination of her parole ("Termination of Parole Letter") stated that on April 12th and 13th, Petitioner's "GPS electronic monitoring device shut off." Termination of Parole Letter [Dkt. 12-4]. However,

ICE's records, (I-213) are devoid of this context, stating that Petitioner was arrested "[d]ue to noncompliance." I-213 at 2. Petitioner's actions— reporting the GPS tracker malfunction, immediately replacing the device, and appearing at her May 19th appointment—can only be characterized as compliant.

Furthermore, the fact that Respondents waited over a month after the ankle monitor malfunction to arrest Petitioner at her appointment belies any material change in circumstances. If the missed callbacks from her ankle monitor indicated that Petitioner was more of a flight risk than she was determined to be at the time of her initial parole, then Respondents would not have waited over a month to detain her. Respondents' delay also demonstrates a lack of any urgency to detain Petitioner, which shows that a pre-deprivation hearing was entirely feasible and required. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (government lacked evidence of "urgent concerns" belying the need for a pre-deprivation hearing where they "waited over six weeks" from the incident at issue to detain the petitioner). "[A]bsent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process." *Id.* (collecting cases). In summary, the Court concludes that requiring Respondents to provide a hearing ***prior*** to detention minimizes the risk of erroneous deprivation of liberty based on unsubstantiated assumptions.

**3. Government Interest**

As to the third *Mathews* factor, there is no countervailing government interest that supports relying exclusively on a post-detention hearing. Indeed, Respondents' nationwide policy of detaining previously-paroled immigrants without a pre-detention hearing not only flouts the law but serves no legitimate purpose. "[W]hether or not the government's existing regulations and practices provide for pre-detention bond hearings, due process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of [his] liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi*, 792 F. Supp. 3d at 1036.

**B. Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical…care in ICE detention facilities." *Id.* at 995. Petitioner is experiencing severe psychological distress and has demonstrated need for further medical evaluation related to pain in her breast—care she was unable to receive in detention. This factor also weighs strongly in favor of Petitioner's Motion.

**C. Balance of Equities and Public Interest**

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Of course, the government and the public undoubtedly have a significant interest in the enforcement of immigration laws, but that includes an interest in "upholding procedural protections against unlawful detention." *Pinchi*, 792 F. Supp. 3d at 1037 (citation omitted). Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due process, there is no way to tell whether the result is in fact correct."). Because Petitioner has shown a likelihood that her detention is unlawful, this factor also weighs strongly in her favor.

## V. CONCLUSION

For the foregoing reasons, and for the reasons stated on the record at the hearing on July 30, 2026, the Court grants the preliminary injunction. The Court ordered Respondents to **release Petitioner Sandra Paola Galeano Ariza (A# 246-652-240)** from custody at the hearing. Petitioner's release shall be under the same terms and conditions, and no more onerous than her OREC before her May 19, 2026 arrest.

Further, Respondents are:

- Enjoined and restrained from re-detaining Petitioner without immediately providing her with a pre-deprivation bond hearing.[4]
- Ordered to meet and confer with Petitioner's counsel regarding whether the Petition may be granted and judgment entered for the same reasons as those articulated in this order.

---

[4] At any such hearing, consistent with Ninth Circuit precedent, the government will bear the burden of showing by clear and convincing evidence whether Petitioner poses a flight risk or danger to the public. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022); *Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) ("At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the detainee] is a danger to the community."); *id.* at 786 (reiterating that "due process requires . . . the government to prove dangerousness or risk of flight by clear and convincing evidence") (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011), *abrogated on other grounds as recognized by Rodriguez Diaz*, 53 F.4th at 1202); *Al-Sadeai v. U.S. Immigr. & Customs Enf't*, 540 F. Supp. 3d 983, 990–91 (S.D. Cal. 2021) (discussing Ninth Circuit precedent establishing the government's burden and finding the IJ's placement of the burden of proof on detainee violated the Due Process Clause); *Balwan v. Bondi*, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026) (surveying circuit caselaw and concluding that the government should bear the burden); *Vazquez v. Mattos*, 2026 WL 658896, at *2 (D. Nev. Mar. 9, 2026) (requiring the government to bear the burden) (citing *Singh* and *Martinez*); *Lima v. Wofford*, 2025 WL 3535009, at *4 (E.D. Cal. Dec. 10, 2025) ("The statute is silent on the burden of proof required in a bond hearing under § 1226(a). However, the Ninth Circuit has squarely ruled that due process requires that the Government bear the burden at a § 1226(a) bond hearing of justifying detention by clear and convincing evidence.") (citing *Singh*, 638 F.3d at 1203-06); *Mendoza v. Noem, et al.*, 2026 WL 683180, at *8-*9 (E.D. Cal. Mar. 11, 2026) (analyzing Ninth Circuit cases to find that the holding in *Singh* placing the burden on the government should still be followed).

- Ordered to either file a joint proposed order and judgment or a statement of the issues that remain to be evaluated by the assigned magistrate judge in further proceedings within 7 days of this Order.

Dated: August 24, 2026

Hernán D. Vera
United States District Judge